**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GREGORY STINNETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 08 C 0709 |
| v. ) | |
| ) | |
| THE CITY OF CHICAGO, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On February 1, 2008, Plaintiff Gregory Stinnett filed the present one-count Complaint against Defendant City of Chicago alleging a violation of Title VII of the Civil Rights Act of 1964, as amended, based on his race. *See* 42 U.S.C. § 2000e *et seq*. Before the Court is the City's Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the Court grants the City's motion and dismisses this lawsuit in its entirety.

**BACKGROUND**

**I.     Northern District of Illinois Local Rule 56.1**

When determining summary judgment motions, the Court derives the background facts from the parties' Northern District of Illinois Local Rule 56.1 statements. Specifically, Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.*, 559

F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). In addition, Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that require the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008).

The purpose of Rule 56.1 statements is to identify the relevant evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006). Moreover, the requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon,* 233 F.3d at 528. In addition, the Court may disregard statements and responses that do not properly cite to the record. *See Cichon v. Exelon Generation Co., L.L.C.,* 401 F.3d 803, 809-10 (7th Cir. 2005); *see also Raymond v. Ameritech Corp.*, 442 F.3d 600, 604 (7th Cir. 2006) ("district courts are entitled to expect strict compliance with Local Rule 56.1"). With these standards in mind, the Court turns to the relevant facts of the case.[1]

## II. Relevant Facts

### A. Introduction

Stinnett is an African-American Ambulance Commander in the Chicago Fire Department ("CFD") (R. 83-1, Def.'s Rule 56.1 Stmt. ¶ 3.) On March 7, 2007, Stinnett filed a charge of

---

[1] The Court denies the City's request – made in its Reply Brief – to strike Stinnett's Rule 56.1 Statement of Facts. (R. 95-1, City's Reply, at 2-3.) Instead, the Court will determine the relevant facts, individually, in accordance with the standards articulated in this section.

race discrimination against the CFD with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 5.) After receiving his Notice of Right to Sue letter dated November 20, 2007, Stinnett filed the instant Complaint on February 1, 2008. (*Id.*) In his one-count Complaint, Stinnett alleges that the CFD failed to promote him to the position of Field Officer based on his race. (*Id.* ¶ 6.)

### B. Stinnett's Work History and Structure of the Chicago Fire Department

Within the CFD is the Bureau of Operations, which consists of Emergency Medical Services ("EMS") and Fire Suppression and Rescue. (*Id.* ¶ 7.) The primary functions of EMS are medical treatment and patient transportation. (*Id.*) The career service ranks in EMS – from lowest to highest – are Fire Paramedic, Paramedic in Charge, Ambulance Commander, and Field Officer. (*Id.* ¶ 8.) Under the service rank for Field Officer, there are positions for Paramedic Field Officer ("Field Officer") and Paramedic Field Officer Per Contract ("Field Officer Per Contract"). (*Id.* ¶ 9.) The Field Officer Per Contract position originated in a 1992 labor agreement between Chicago Fire Fighters' Union and the City. (*Id.*) Pursuant to the 1992 labor agreement, CFD members holding the exempt rank of District Commander could accept the newly created career service Field Officer Per Contract position while maintaining their District Commander pay grade. (*Id.*)

When the CFD hired Stinnett in 1983, he was a Fire Paramedic on the EMS side of the Bureau of Operations. (*Id.* ¶ 10.) In 1989, the CFD promoted Stinnett to the position of Paramedic Officer. (*Id.*) After his promotion to Paramedic Officer, CFD changed the title of Stinnett's position to Paramedic in Charge. (*Id.*) In 1995, the CFD promoted Stinnett to Ambulance Commander based on Stinnett's seniority. (*Id.* ¶ 11.) As an Ambulance

Commander, Stinnett's job responsibilities include supervising the ambulance company with respect to ordering supplies, maintaining paperwork that other shifts may use, and being responsible for inventory. (*Id*.)

    **C.**    **The 2000 and 2007 Field Officer Promotional Eligibility Lists**

Promotions to the rank of Field Officer are made from an eligibility list comprised of Ambulance Commanders. (*Id*. ¶ 16.) In 2000, Stinnett took the Field Officer promotional examination and scored 89.5. (*Id*. ¶ 14.) Six other people also scored 89.5 on the 2000 Field Officer promotional examination. (*Id*.) The Department of Human Resources ("DHR") then ranked the individuals for the 2000 Field Officer eligibility list, considering only the individual's examination score and seniority. (*Id*. ¶ 15.) The people scoring 89.5 on the 2000 Field Officer promotional examination were ranked between 27 and 33 – with Kevin Byrne, Jr. ranked 29, John Kaveney ranked 31, Stinnett ranked 32, and Michael McKinnis ranked 33.[2] (*Id*.)

The CFD made promotions from the 2000 Field Officer eligibility list eight times between June 1, 2000 and February 10, 2007. (*Id*. ¶ 18.) In February 2007, the CFD promoted Byrne and Kaveney from the 2000 eligibility list pursuant to the Office of Management and Budget's approved vacancies. (Def.'s Stmt. Facts ¶¶ 44, 45.) Stinnett was the next person in line on the 2000 Field Officer eligibility list for promotion to Field Officer after the CFD promoted Byrne and Kaveney. (R. 93-1, Pl.'s Rule 56.1 Stmt. Facts ¶¶ 1, 4.) The CFD, however, did not promote anyone else from the 2000 eligibility list after Byrne's and Kaveney's promotions in February 2007. (*Id*. ¶ 22.)

---

    [2] The CFD did not list the names of the individuals on the Field Officer eligibility list who refused the promotion, are retired, resigned, or are deceased. (Def.'s Stmt. Facts ¶ 17.)

The CFD maintains that it did not fill the position of Field Officer after February 2007 from the 2000 Field Officer eligibility list because it decided to give a new eligibility examination. (Def.'s Stmt. Facts ¶ 19.) More specifically, in December 2006, the CFD issued a departmental memorandum stating that there would be an upcoming examination for the position of Field Officer. (*Id.* ¶ 21.) In January 2007, DHR issued a "Paramedic Field Officer Examination Announcement" advising CFD personnel that the CFD would administer the written portion of a promotional examination for Field Officer on March 23, 2007. (*Id.* ¶ 22.) The CFD also instructed potential applicants to submit their applications to take the 2007 Field Officer promotional examination between January 31, 2007 and February 12, 2007. (*Id.*) The CFD then conducted the oral portion of the 2007 Field Officer promotional examination between April 23, 2007 and April 27, 2007. (*Id.*) Outside contractors, who worked with DHR personnel, developed, administered, and scored the 2007 Field Officer promotional examination. (*Id.* ¶ 23.)

Stinnett took the 2007 Field Officer promotional examination scoring 54.61 and, consequently, the CFD ranked him 48 out of 57 on the 2007 Field Officer eligibility list. (*Id.*) Thereafter, the acting Supervising Human Resources Analyst drafted two orders that the Commissioner of DHR approved on January 31, 2008. (*Id.* ¶ 26.) The first order cancelled the 2000 Field Officer eligibility list and the second order adopted the 2007 Field Officer eligibility list. (*Id.*) After February 2007, there were ten Ambulance Commanders on the 2000 Field Officer eligibility who the CFD did not promote to Field Supervisor, including seven white individuals, a Hispanic individual, and two African-American individuals. (*Id.* ¶ 57.) Meanwhile, on March 10, 2008, the CFD made eleven promotions to Field Officer from the 2007 Field Officer eligibility list. (*Id.* ¶ 27; Pl.'s Stmt. Facts ¶ 22.) To date, the CFD has not

5

promoted Stinnett to the position of Field Officer.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Estate of Suskovich v. Anthem Health Plans of Va., Inc.,* 553 F.3d 559, 563 (7th Cir. 2009) (quoting Fed. R. Civ. P 56(c)). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted); *see also* Fed.R.Civ.P. 56(e)(2) (requiring adverse party to "set out specific facts").

## ANALYSIS

**I.     Scope of EEOC Charge**

Stinnett filed his EEOC charge on March 7, 2007 alleging that in February 2007 the CFD did not promote him based on his race. The CFD contends that because Stinnett did not mark the box "continuing violation" on his EEOC charge, "any alleged failure to promote after February

2007 is outside the scope of his charge."[3] (R. 81-1, City's Brief, at 6.) The CFD, however, does not challenge the timeliness of Stinnett's failure to promote case. *See Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) ("filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling"). In fact, the CFD admits that Stinnett's Complaint was timely. (*See* Def.'s Stmt. Facts ¶ 5.)

As to the City's scope argument, a Title VII plaintiff cannot bring claims in a federal lawsuit if they were not included in his EEOC charge. *See Teal v. Potter,* 559 F.3d 687, 691 (7th Cir. 2009) (citing *Cheek v. Western & Southern Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir. 1994)). In addition to the claims in the EEOC charge, however, "Title VII plaintiffs may also litigate claims which are like or reasonably related to the allegations in the [administrative] charge and growing out of such allegations." *See Teal,* 559 F.3d at 691-92 (citation omitted). As the Seventh Circuit instructs "this standard is a liberal one and is satisfied if there is a reasonable relationship between the allegations in the charge and those in the complaint, and the claim in the complaint could reasonably be expected to be discovered in the course of the EEOC's investigation." *Id.* at 692 (internal citation omitted); *see also Miller v. American Airlines, Inc.,* 525 F.3d 520, 525-26 (7th Cir. 2008) (courts "apply a liberal standard in determining if new claims are reasonably related to those claims mentioned in the EEOC charge").

Here, the CFD argues that there is no reasonable relationship between the CFD's failure

---

[3] The Court previously rejected the City's argument based on the scope of Stinnett's EEOC charge in the context of the City's motion for a protective order regarding Stinnett's discovery requests. (R. 67-1, Minute Order, at 3.)

to promote Stinnett in February 2007 and any other denials of promotion. The Court disagrees. The allegations in Stinnett's EEOC charge mirror the allegations in Stinnett's Complaint, namely, that the CFD failed to promote him based on his race in conjunction with the 2000 and 2007 Field Officer eligibility lists. Indeed, Stinnett's claims are "so related and intertwined in time, people, and substance that to ignore that relationship for a strict and technical application of the rule would subvert the liberal remedial purposes of the Act." *Sitar v. Indiana Dept. of Transp.,* 344 F.3d 720, 726 (7th Cir. 2003) (citation omitted). The Court thus denies Defendant's motion based on the scope of Stinnett's EEOC charge and turns to the merits of Stinnett's race discrimination claim.

## II.  Race Discrimination Claim

In his Complaint, Stinnett alleges that the CFD did not promote him to the position of Field Officer based on his race in violation of Title VII. Pursuant to Title VII, it is an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Stinnett may prove intentional race discrimination by either the direct method or indirect method of proof as set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Winsley v. Cook County,* 563 F.3d 598, 604 (7th Cir. 2009). Stinnett maintains that he can establish race discrimination under both methods of proof. The Court thus addresses his arguments in turn.

### A.  Indirect Method of Proof

Under the indirect method of proof, Stinnett must establish a prima facie case of his

failure to promote claim by showing that: (1) he is a member of a protected class; (2) he is qualified for the position; (3) he was rejected for the position; and (4) the position was given to someone outside of Stinnett's protected class who was similarly or less qualified than he was. *Hobbs v. City of Chicago,* 573 F.3d 454, 460 (7th Cir. 2009). If Stinnett establishes these four prima facie elements, the "presumption of discrimination created by establishing a prima facie case shifts the burden to the defendant 'to produce a legitimate, noninvidious reason for its actions.'" *Id.* (citation omitted). If the City rebuts Stinnett's prima face case, the burden shifts back to Stinnett to establish that the City's proffered reasons are merely pretext for race discrimination. *See id.*; *Jackson v. City of Chicago,* 552 F.3d 619, 622 (7th Cir. 2009). As with all Title VII cases, Stinnett bears the "ultimate burden of persuasion." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

For purposes of this summary judgment motion, the City does not dispute the first two elements of Stinnett's prima facie case, namely, that Stinnett is a member of a protected class and that he was qualified for the promotion to Field Officer. Instead, the City argues that Stinnett cannot establish the third and fourth prima facie elements. The Court turns to the fourth element – that the CFD promoted someone similarly situated outside of the protected class to Field Officer who was less qualified or similarly qualified to Stinnett – because it is dispositive. "The 'similarly situated' test is a flexible, commonsense inquiry whose requirements vary from case to case." *Barricks v. Eli Lilly & Co.,* 481 F.3d 556, 560 (7th Cir. 2007) (citing *Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 404-05 (7th Cir. 2007)). "Its purpose is to determine whether there are enough common factors between a plaintiff and a comparator – and few enough confounding ones – to allow for a meaningful comparison in order to divine whether

9

discrimination was at play." *Barricks,* 481 F.3d at 560.

In support of his fourth prima facie element, Stinnett maintains that he was similarly situated to Byrne and Kaveney – who are white and were promoted to Field Officer in February 2007 – because they all shared the same score on the 2000 Field Officer eligibility examination and had experience at the CFD. (Pl.'s Stmt. Facts ¶ 23.) What Stinnett fails to mention, however, is that Byrne and Kaveney had more experience at the CFD than he had, and thus the CFD ranked them higher on the 2000 Field Officer eligibility list based on their seniority. *See Winsley,* 563 F.3d at 605 (similarly situated employees must be directly comparable in all material respects). Because Byrne and Kaveney had more seniority than Stinnett at the time of their February 2007 promotions, they are not similarly situated for purposes of Stinnett's failure to promote claim. *See Jones v. City of Springfield, Ill.,* 554 F.3d 668, 671 (7th Cir. 2009).

Stinnett also maintains that the CFD promoted eleven individuals instead of him in March 2008. Stinnett, however, fails to provide the Court with any details about these individuals to make a meaningful comparison. *See Winsley,* 563 F.3d at 605; *Barricks,* 481 F.3d at 560. Also, from the record, it is undisputed that these individuals had higher scores on the 2007 Field Officer examination than Stinnett did. (*See* Def.'s Stmt. Facts ¶ 24.) Thus, these individuals are not similarly situated for purposes of Stinnett's failure to promote claim. *See Jones,* 554 F.3d at 671.

Construing the evidence and all reasonable inferences in Stinnett's favor, he fails to provide sufficient evidence to make his prima facie case, and thus has failed to establish his race discrimination claim through the indirect method of proof. *See Williams v. Airborne Exp., Inc.,* 521 F.3d 765, 768 (7th Cir. 2008) ("failure to establish any single element of the prima facie

10

case dooms a discrimination claim"). The Court thus turns to Stinnett's arguments under the direct method of proof.

B. **Direct Method of Proof**

"Under the direct method of proof, a plaintiff survives summary judgment by showing sufficient evidence, whether it is labeled direct or circumstantial, on which a jury could find that the adverse employment action in question was taken for a discriminatory reason." *Jones,* 554 F.3d at 671. To clarify, "[d]irect evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Nagle v. Village of Calumet Park,* 554 F.3d 1106, 1114 (7th Cir. 2009). On the other hand, circumstantial evidence "suggests discrimination albeit through a longer chain of inferences." *Hasan v. Foley & Lardner, LLP,* 552 F.3d 520, 527 (7th Cir. 2008). "The key to the direct method of proof is that the evidence, whether direct or circumstantial, points directly to a discriminatory reason for the employer's action." *Id.* (citation and internal quotation marks omitted).

Direct evidence under the direct method of proof "usually requires an admission from the decisionmaker about his discriminatory animus, which is rare indeed." *Nagle,* 554 F.3d at 1114; *see also Simpson v. Office of Chief Judge of Circuit Court of Will County,* 559 F.3d 706, 717 (7th Cir. 2009) ("Direct evidence usually involves some form of admission by the decisionmaker."). Here, Stinnett does not present evidence of a direct admission, but instead sets forth circumstantial evidence. A plaintiff may establish an inference of intentional discrimination under the direct method of proof by relying on circumstantial evidence, including:

> (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the

11

employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination.

*Nagle,* 554 F.3d at 1114-15 (citing *Hemsworth v. Quotesmith.Com, Inc.,* 476 F.3d 487, 491 (7th Cir. 2007)); *see also Troupe v. May Dep't Stores Co.,* 20 F.3d 734, 736 (7th Cir. 1994). Under the direct method of proof, the Court must consider "all of the [] evidence of discrimination to determine whether the plaintiff's claim can survive summary judgment." *See Nagle,* 554 F.3d at 1115. Moreover, under the direct method of proof, Stinnett has the burden of proving intentional discrimination. *See Jones,* 554 F.3d at 672.

Here, Stinnett maintains that his "direct evidence of discrimination includes Defendant's suspicious timing and behavior, better treatment of similarly situated employees of a different race, and beliefs of CFD personnel and union representatives."[4] (R. 94-1, Pl.'s Resp. Brief, at 15.) In support of his suspicious timing argument, Stinnett maintains that the day after the CFD promoted Byrne and Kaveney to Field Officer in February 20007, Deputy Fire Commissioner Leslie Noy – who is African-American – decided that he would no longer make promotions from the 2000 Field Officer eligibility list. First, it is undisputed that the CFD decided to administer a new Field Officer eligibility examination in December 2006, if not earlier. (Def.'s Stmt. Facts ¶ 21; Def.'s Resp. ¶ 36.) Second, Noy's deposition testimony that Stinnett relies upon does not support his argument. More specifically, at his deposition, Noy testified that it was the Fire Commissioner's decision – and not his – to decide whether the 2000 Field Officer eligibility list would be used after February 2007, although Noy recommended to the Fire Commissioner that

---

[4] For the same reasons discussed under the indirect method of proving intentional race discrimination, Stinnett's argument based on similarly situated individuals under the direct method of proof also fails.

they should stop using the 2000 eligibility list because DHR was administrating a new examination. (Pl.'s Ex. MM, Noy Dep., at 93, 113-14; *see also* Def.'s Stmt. Facts ¶¶ 19, 31.) In addition, Stinnett's argument that there was another Field Officer position open in February 2007 – to further support his suspicious timing argument – is equally unavailing because this position had not gone through the City's budgetary approval process at that time. (*See* Pl.'s Stmt. Facts ¶ 2; R. 96-1, Def.'s Resp. Pl.'s Stmt. Facts ¶ 2.) Indeed, as the Seventh Circuit instructs, the "lack of an opening is always a legitimate reason for refusing to hire and promote." *Jones,* 554 F.3d at 673.

Next, Stinnett attempts to portray the CFD's reasons for administrating a new examination as suspicious and argues that the only reasonable inference from the CFD's "changing" reasons for not promoting him is that the CFD is lying. Stinnett bases his argument on the fact that in or around August or October 2007, the Federal "Shakman" Monitor initiated an investigation into the 2007 Field Officer eligibility list and examination for political patronage violations after Stinnett had filed a complaint about not being promoted.[5] (Pl.'s Stmt. Facts ¶ 30; Def.'s Resp. ¶ 30.) In particular, Stinnett relies on his own testimony that Tom Cordell, an investigator with the Federal Monitor's office, told him that the CFD informed the Federal Monitor that it stopped promoting from the 2000 Field Officer eligibility list because it wanted a "better caliber of people." (Pl.'s Stmt. Facts ¶ 30; Pl.'s Ex. NN, Stinnett Dep., at 212-13.) Cordell's statement, however, is hearsay offered without an exception – and it is well-established that "hearsay is inadmissible in summary judgment proceedings to the same extent

---

[5] "The *Shakman* case restricted the patronage hiring practices of various agencies of the City of Chicago and of Cook County." *Shakman v. Democratic Org. of Cook County*, 919 F.2d 455, 456-57 (7th Cir. 1990).

that it is inadmissible in a trial." *Eisenstadt v. Centel Corp.,* 113 F.3d 738, 742 (7th Cir. 1997); *see also Carlisle v. Deere & Co.,* 576 F.3d 649, 655 (7th Cir. 2009) (to defeat summary judgment, non-movant must rely on admissible evidence). Meanwhile, Deputy Fire Commissioner Noy testified that one of the reasons that the CFD did not adopt the 2007 Field Officer eligibility list until January 31, 2008 was due to the ongoing Federal Monitor investigation. (Pl.'s Ex. MM, Noy Dep., at 91.)

Nevertheless – despite Stinnett's arguments to the contrary – the CFD's reasons for not promoting Stinnett have not changed during the course of this litigation. Instead, the CFD has consistently maintained that it decided not to promote from the 2000 Field Officer eligibility list after February 2007 because it was preparing to administer a new Field Officer promotional examination. (Def.'s Stmt. Facts ¶ 19.) In particular, the CFD was creating a new list because the 2000 eligibility list was old and the CFD was planning on giving promotional examinations every three years. (*Id.* ¶ 20.) Indeed, it is undisputed that in December 2006, the CFD issued a department memorandum stating that there would be an upcoming examination for the position of Field Officer and in January 2007, DHR issued a "Paramedic Field Officer Examination Announcement" advising CFD personnel that the CFD would give the written portion of a promotional examination for Field Officer on March 23, 2007. Meanwhile, the CFD's statement that it did not promote Stinnett due to a lack of budgetary approval does not contradict the CFD's other statements, but is another legitimate reason why the CFD did not promote Stinnett to Field Officer in February 2007. (Def.'s Stmt. Facts ¶ 19.)

Next, Stinnett presents evidence, albeit refuted, that there were other openings for the position of Field Officer between the time period of February 2007 and January 31, 2008, when

14

the CFD adopted the 2007 Field Officer eligibility list, yet the CFD did not promote him during this time period. Accepting Stinnett's allegations as true, it is undisputed that the CFD did not promote anyone during that time period, and "when no employee is promoted during the relevant time period, a failure-to-promote claim must fail because the claimant cannot argue that he was treated differently than anyone else." *Jones*, 554 F.3d at 673.

Further, Stinnett maintains that the CFD has only promoted two African-Americans to the position of Field Officer, yet at his deposition, Stinnett acknowledged that three African-Americans had been promoted, not counting Deputy Fire Commissioner Noy, and that seven African-Americans were on the 2000 Field Officer eligibility list. (Pl.'s Stmt. ¶ 25; Pl.'s Ex. NN, Stinnett Dep., at 82-85.) Without more information on the relevant applicant pools, however, Stinnett's statistical evidence does not raise a genuine issue of material fact that the CFD intentionally discriminated against him based on his race. *See Sublett v. John Wiley & Sons, Inc.,* 463 F.3d 731, 739 (7th Cir. 2006).

Finally, Stinnett argues that other CFD personnel and union representatives believed that the CFD did not promote him due to his race. More specifically, Stinnett relies on the testimony of Michael McKittrick, a CFD Field Officer and chief steward for the union, in which McKittrick stated that other paramedics and CFD personnel thought that the CFD did not promote Stinnett because of his race. (Pl.'s Stmt. ¶ 26; Pl.'s Ex. II, McKittrick Dep., at 8, 93-94.) Stinnett also offers his own deposition testimony that union member and paramedic, Pete Houlihan, "felt" and "believed" that the CFD did not promote Stinnett due to his race. (*Id.*; Pl.'s Ex. NN, Stinnett Dep., at 98-102.) Houlihan, however, testified that he never heard anyone say that Stinnett was not promoted because of his race. (*Id.*, Stinnett Dep., at 91, 104-05; Def.'s

15

Stmt. Facts ¶ 54.) Stinnett also testified that Field Officer Larry Webb told him that he was not promoted due to his race. (Pl.'s Stmt. Facts ¶ 26; Pl.'s Ex. NN, Stinnett Dep., at 178-79.) At his own deposition, however, Webb testified that no one told him that the CFD did not promote Stinnett based on his race. (Def.'s Ex. 96-6, Ex. 23, Webb Dep., at 48.)

Not only is this evidence hearsay – offered without a hearsay exception[6] – but Stinnett's argument that this testimony establishes intentional discrimination is highly speculative, especially because there is no evidence in the record that these individuals had any involvement in the CFD's promotional process. *See Rockwell Automation, Inc. v. National Union Fire Ins. Co. of Pittsburgh,* 544 F.3d 752, 757 (7th Cir. 2008) (courts "are not required to draw every conceivable inference from the record, and mere speculation or conjecture will not defeat a summary judgment motion.") (citation omitted); *see also Hemsworth,* 476 F.3d at 491 (remarks may provide inference of discrimination if made by decisionmaker). In other words, to survive summary judgment, Stinnett must point to specific facts that establish a genuine issue of material fact for trial – inferences relying on speculation or conjecture will not suffice. *See Trade Fin. Partners, LLC v. AAR Corp.,* 573 F.3d 401, 407 (7th Cir. 2009).

Accordingly, viewing the evidence and all reasonable inferences in a light most favorable to Stinnett, and considering all of the evidence of discrimination, *see Nagle,* 554 F.3d at 1115, Stinnett has failed to present sufficient evidence raising a genuine issue of material fact for trial that the CFD did not promote him to the position of Field Officer based on his race.

---

[6] The admissions by a party-opponent exception under Federal Rule of Evidence 801(d)(2)(D) does not apply under the circumstances because there is no evidence in the record that Houlihan, Webb, or McKittrick were personally involved in the promotional decision at issue. *See Stephens v. Erickson,* 569 F.3d 779, 793 (7th Cir. 2009).

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.

**Date:** October 5, 2009

                                                **ENTERED**

                                                _____
                                                **AMY J. ST. EVE**
                                                **United States District Court Judge**